UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT STOMBERSKI,                          Case No. 13-11743

             Plaintiff,                   Gerald E. Rosen
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Michael Hluchaniuk
                                            United States Magistrate Judge

             Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS -MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 13)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On April 18, 2013, plaintiff Robert Stomberski filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Gerald E. Rosen referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claims for disability

insurance and supplemental security income benefits.  (Dkt. 2).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 8, 13).[1]

---

[1] On February 17, 2014, after the parties had filed their respective motions for summary
judgment, plaintiff's attorney filed a motion to withdraw from representation of plaintiff in this
matter.  (Dkt. 14).  A hearing was held on this motion on April 17, 2014, and the Court issued an
order granting plaintiff's counsel's motion to withdraw.  (Dkt. 17).  The Court informed plaintiff
that he had until May 19, 2014 to obtain new counsel and have a new attorney file an appearance

### B.     Administrative Proceedings

Plaintiff filed the instant claims for disability insurance benefits (DIB) and for supplemental security income (SSI) on September 23, 2010, alleging that he became disabled beginning January 6, 2010.  (Dkt. 6-5, Pg ID 185-86, 192-94). The claims were initially disapproved by the Commissioner on April 14, 2010. (Dkt. 6-3, Pg ID 118-19).  Plaintiff requested a hearing and on November 29, 2011, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Craig R. Petersen, who considered the case de novo.  (Dkt. 6-2, Pg ID 59-94).  In a decision dated December 13, 2011, the ALJ found that plaintiff was not disabled. (Dkt. 6-2, Pg ID 38-52).  Plaintiff requested a review of this decision on January 23, 2012.  (Dkt. 6-2, Pg ID 34-36).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[2] the Appeals Council, on February 19, 2013, denied plaintiff's request for review.  (Dkt. 6-2, Pg ID 27-31); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

in this matter, if he so desired, but that if he did not do so, the Court would decide this matter based on the pleadings on file.  (*Id.*).  Plaintiff did not obtain new counsel and accordingly, the Court will decide this matter based on the pleadings on file at Docket No. 8 and 13.

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Plaintiff was born in 1975 and was 34 years of age on the alleged disability onset date and 37 years old at the date last insured, December 31, 2012.  (Dkt. 6-3, Pg ID 98).  Plaintiff had past relevant work experience as a carpenter and an equipment operator.  (Dkt. 6-2, Pg ID 50, 91).  The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since the application date.  (Dkt. 6-2, Pg ID 43).  At step two, the ALJ found that plaintiff's left hip pain status post acetabulum fracture, degenerative disc disease of the lumbar spine, left knee pain, left shoulder bursitis, right shoulder mild degenerative cyst, headaches, anxiety, and depression were "severe" within the meaning of the second sequential step, but that plaintiff's presacral mass was not severe, as there were no significant objective medical findings in the record to support more than minimal limitations on plaintiff's ability to perform work activities arising from this impairment.  (Dkt. 6-2, Pg ID 43-44).  At step three, the ALJ found no evidence that plaintiff's

combination of impairments met or equaled one of the listings in the regulations.

(Dkt. 6-2, Pg ID 44-45).

The ALJ determined that plaintiff has the following residual functional

capacity ("RFC"):

> [T]o perform light work as defined in 20 CFR
> 404.1456(b) and 416.967(b) except he can lift/carry 20
> pounds occasionally and 10 pounds frequently.  He can
> push/pull up to 10 pounds, stand/walk 4 hours of an 8-
> hour workday, and sit 4 hours of an 8-hour workday with
> normal breaks.  The claimant can occasionally stair or
> ramp climb, but not climb ladders, ropes or scaffolds.
> He can occasionally stoop, squat, kneel, crouch and
> crawl.  He can sit/stand at will.  There would [be] no
> working on unprotected heights or around dangerous
> machinery.  He has no manipulative, visual or
> communication limitations.  The claimant can perform
> simple, routine and repetitive tasks, and work involving
> simple, work related decisions, with few, if any, work
> related changes.  He has no social deficits.

(Dkt. 6-2, Pg ID 45-50).  At step four, the ALJ found that plaintiff was unable to

perform his past relevant work because the demands of that past relevant work

exceed the RFC.  (Dkt. 6-2, Pg ID 50).  At step five, the ALJ denied plaintiff

benefits because he could perform a significant number of jobs available in the

national economy.  (Dkt. 6-2, Pg ID 50-51).

## B.    Plaintiff's Claims of Error

Plaintiff argues that the Commissioner erred as a matter of law in assessing

plaintiff's credibility and in failing to properly evaluate the record evidence,

4

thereby forming an inaccurate hypothetical that did not accurately portray plaintiff's impairments.  Plaintiff contends that because each element of the hypothetical does not accurately describe him in all significant, relevant respects, the vocational expert's testimony at the hearing should not constitute substantial evidence supporting the ALJ's decision.  According to plaintiff, the ALJ found that plaintiff suffered from the severe impairments of "left hip pain status post acetabulum fracture, degenerative disc disease of the lumbar spine, left knee pain, left shoulder bursitis, right shoulder mild degenerative cyst, headaches, anxiety and depression."  (Tr. 17).  The ALJ also concluded that although he found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.  (Tr. 23).  Plaintiff argues that this conclusion by the ALJ was clearly incorrect and that plaintiff's statements concerning the intensity, persistence and limiting effects of his impairments were supported by the medical records.

Plaintiff contends that he testified at the hearing, with regard to his hip, that he has "pain that goes all the way down my - - into my private parts, down my groin into my knee and to the bottom of my feet and my toes."  (Tr. 50).  He also stated that he has "lower back pain", and that he has "lots of pain down my arms,"

5

"my hands fall asleep," "I drop things," and "I have a hard time holding on to things, they always fall asleep." (Tr. 50). Additionally, he stated that his knees "are in really bad shape" and that "they bother me all the time, every second as your heart beats." (Tr. 51). With regard to his mental issues, plaintiff contends that he stated that he has anxiety and that "I do have a lot of stress…." (Tr. 51). Plaintiff also testified that he can only stand 20 minutes, walk "between a hundred and 250 yards, and then I'm laid up for three, four days before I can even really do a whole lot of anything else and go for a walk again," sit for not very long, and that "it bothers me to even carry a gallon of milk because my shoulders are so messed up." (Tr. 54)

Plaintiff contends that his testimony is backed up by medical records and that the ALJ clearly erred in finding that his testimony was not credible. According to plaintiff, an x-ray of his left femur dated January 25, 2010 indicated a "fracture deformity of the left acetabulum." (Tr. 269). Also the x-ray of the left hip dated January 10, 2010 indicated that "there is a comminuted fracture involving the posterior column of the left acetabulum." (Tr. 280). And, the record dated February 17, 2010 indicated complaints of "Lt hip and lower back pain." (Tr. 292, 294). Plaintiff continues that the record dated March 26, 2010 indicates that "he continues to get a lot of pain in the groin area and behind the hip and then down into the thigh," and that the "pain that goes all the way down the leg into the

foot," and the doctor assessed "status post comminuted fracture of the posterior wall of the left acetabulum." (Tr. 326). Plaintiff further asserts that the MRI of the lumbar spine dated May 28, 2010 gave the impression of "degenerative disk desiccation at L3-L4 through L5-S1 level," "mild degenerative bulging annulus at L3-L4," "no focal disc herniation, significant central canal stenosis or neural foraminal compromise," and "mild hypertrophic facet joints at L3-L4 through L5-S1." (Tr. 354). Plaintiff therefore concludes that his testimony regarding his severe medical impairments is backed up by medical documentation, and for the ALJ to indicate that his testimony was not credible is clearly in error.

Plaintiff asserts that the vocational expert testified, in response to the hypothetical questions posed by the ALJ, that he believed claimant could perform work as a counter clerk, assembler, and inspector. (Tr. 25). Plaintiff argues that the hypothetical question that was posed and followed by the ALJ did not represent plaintiff in every relevant aspect as required. Specifically, when the vocational expert testified in response to a hypothetical question assuming that the "person would be off task 25 percent or more of any work day, and miss three or more days per month due to ongoing physical and/or mental impairments," that there would be no work available. (Tr. 67). Plaintiff believes the ALJ should have followed this hypothetical and argues that the hypothetical that the ALJ chose to follow, based on plaintiff's RFC, did not represent plaintiff in every

7

aspect and thus cannot and should not constitute substantial evidence. According to plaintiff, it is clear from the medical evidence of record and plaintiff's testimony that his ability to engage in substantial gainful activity is severely limited as a result of his physical conditions. As such, plaintiff would only be capable of engaging in substantial gainful activity by enduring great pain and therefore should be found disabled in accordance with the Social Security Rules and Regulations. Plaintiff therefore requests the Court to reverse the decision denying benefits and remand this case with an award of benefits, or, in the alternative, remand this matter for further proceedings consistent with the above arguments.

### C.      Commissioner's Motion for Summary Judgment

The Commissioner argues that substantial evidence supports the ALJ's finding that plaintiff could perform light work with restrictions. According to the Commissioner, in reaching this conclusion, the ALJ considered the objective medical evidence. Specifically, the ALJ noted that plaintiff had a motor vehicle accident in January 2010, and that he claimed he was disabled as a result of this accident. (Tr. 20). The ALJ discussed post-accident medical evaluations of plaintiff's left knee, left hip, back, shoulders and headaches, and noted that diagnostic testing of plaintiff's left knee on January 10, 2010 indicated that there was no fracture or dislocation, no joint effusion or soft tissue abnormality, and a

8

follow up diagnostic test on plaintiff's left knee was unremarkable. (Tr. 20, 270, 299). The ALJ stated that plaintiff fractured his left hip in the car accident, and that a follow-up study on January 25, 2010 indicated that there was no soft tissue abnormality and that the hip joint was maintained. (Tr. 20-21, 277). By May 2010, an MRI indicated the hip fracture was healed (Tr. 21, 355), and an imaging study of plaintiff's left hip in January 2011 revealed no abnormality and symmetric bilateral hip joints. (Tr. 21, 378).

The Commissioner continues that, addressing plaintiff's back, the ALJ noted that a diagnostic study of plaintiff's lumbar spine on February 17, 2010 was essentially normal. (Tr. 21, 298). A May 28, 2010 MRI revealed no disc herniation, no central canal stenosis or neural foraminal compromise, and some degenerative disc degeneration and mild degenerative bulging. (Tr. 21, 354). The ALJ noted that imaging results of plaintiff's left shoulder after his car accident revealed no fractures and normal bone density, and there was evidence of a left fourth rib fracture. (Tr. 21, 362). In October 2011, an MRI revealed mild bursitis of the left shoulder and a mild degenerative cyst of the right shoulder, but no evidence of a rotator cuff tear on either shoulder. (Tr. 21, 417-18). The ALJ further stated that there was minimal evidence relating to plaintiff's alleged headaches, and no clinical or imaging results showing impairment caused by cerebral trauma or other organic abnormalities. (Tr. 21).

9

The Commissioner contends that the ALJ also considered treatment notes from plaintiff's doctors, which the ALJ described as conservative in nature. (Tr. 21-22, 289-305, 325-64, 374-416). As described by the ALJ, the treatment notes indicated that plaintiff's left hip fracture was well healed, his coordination and strength were intact, and his gait was relatively normal. (Tr. 21, 325-26, 308-10, 355). Indeed, plaintiff's doctor indicated in March 2010 that, "at this point, I would not suggest anything other than just the occasional anti-inflammatory or pain control and using his left hip to tolerance." (Tr. 325). The ALJ also noted that no medical records indicated that plaintiff lacked the ability to ambulate effectively, or that his hip, back or knee pain interfered seriously with his ability to initiate, sustain or complete activities. (Tr. 21-22, 269-81, 308-12, 325-64). To the contrary, his doctor stated, "socially and medically, he needs to go back to work . . . . He has no real medical problems." (Tr. 326). Furthermore, the ALJ noted that treatment notes from July and August 2010 indicate that plaintiff told his doctors that he was driving, working, and not taking Morphine. (Tr. 22, 310, 335, 431).

The Commissioner argues that the ALJ also considered the medical opinion evidence. (Tr. 23). Specifically, the ALJ gave great weight to the opinion of plaintiff's treating physician, Dr. Mark Weber, M.D., who stated on March 10, 2010 that plaintiff's hip was well-healed and opined that plaintiff could work

10

without restriction.  (Tr. 23, 325).  According to the Commissioner, plaintiff argues in his brief that an ALJ is to give a treating physician's opinion great weight if it is consistent with the evidence and supported with significant clinical findings.  The Commissioner contends that while plaintiff's brief does not specifically mention his treating physician, Dr. Weber, by making this argument, he concedes that the ALJ appropriately gave Dr. Weber's opinion great weight. The Commissioner further asserts that the ALJ also gave great weight to the examining physician Dr. Scott Lazzara, M.D., who evaluated plaintiff's complaints of hip, back, shoulder and knee pain, headaches and memory difficulties.  (Tr. 23, 365-71).  Dr. Lazzara noted that plaintiff's immediate, recent and remote memory were intact and that plaintiff had a diminished range of motion in his left hip and back.  (Tr. 23, 369).  Dr. Lazzara noted that plaintiff had only mild difficulty doing orthopedic maneuvers, walked with a guarded gait due to pain, and had normal upper extremities.  (Tr. 23, 369).

Tellingly, the Commissioner continues, plaintiff did not address Dr. Lazzara's opinion in his brief or argue that the ALJ erred in evaluating it.  Rather, the Commissioner asserts, plaintiff's main argument is that the ALJ's finding that plaintiff was not fully credible when he testified he was disabled is in error because his testimony was supported by medical evidence.  The Commissioner argues, however that the ALJ appropriately considered plaintiff's testimony about

11

his symptoms and determined that it was not "wholly credible when viewed in light of the medical evidence." (Tr. 23). According to the Commissioner, a court "may not disturb" an ALJ's well-reasoned credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The Commissioner contends that the ALJ explained that the objective medical evidence, as described above, did not support plaintiff's contention that he was disabled (Tr. 21-23), and an ALJ may discount a claimant's subjective complaints where, as here, the objective evidence did not suggest that he was disabled. In particular, the Commissioner continues, the ALJ noted that plaintiff's treatment "has been relatively conservative in nature," generally consisting of moist heat and pain medications. (Tr. 22, 318-26, 388-96). The ALJ also noted that, in July and August 2010, plaintiff told his doctors that he was working. (Tr. 22-23, 310, 335). The ALJ further considered that plaintiff's treating doctor opined that plaintiff was capable of performing work without restriction. (Tr. 23, 325-26).

The Commissioner contends that plaintiff also argues that the ALJ misconstrued the medical evidence and his statements about his symptoms in concluding that he was not disabled, and, in doing so, plaintiff cites many medical records. The Commissioner argues that none of the evidence plaintiff cites compelled the conclusion that his impairments preclude him from performing a restricted range of light work. For example, plaintiff points to several medical

records, including x-rays after his accident, his complaints to doctors about pain, and an MRI indicating degenerative disk desiccation and mild degenerative bulging.  But, the Commissioner argues, the fact that plaintiff had impairments and pain did not prove that he was disabled by them.  Rather, the mere diagnosis of an impairment is not enough to show disability; a claimant must also prove its severity and functional impact.  *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988).  The Commissioner argues that plaintiff overlooks objective medical evidence which shows that his injuries were "well healed" and he had only mild difficulty with orthopedic maneuvers, and that he had normal upper extremities.  (Tr. 23, 326, 369).  Plaintiff also overlooks the opinion evidence of his treating physician that he was able to return to work.  (Tr. 325).  According to the Commissioner, it is axiomatic that "an impairment that can be remedied by treatment with reasonable effort and safety cannot support a finding of disability."  *Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986).

The Commissioner finally contends that plaintiff's argument that some of the ALJ's hypothetical questions to the vocational expert failed to accommodate his limitations does not raise new arguments and relies solely on assertions he raised in his challenge to the ALJ's residual functional capacity assessment.  Thus, the Commissioner concludes, for the same reasons stated above, the ALJ's reliance on the vocational expert's testimony was supported by substantial

13

evidence and should be affirmed.  The Commissioner concludes that plaintiff has not come close to meeting his burden of showing that his impairments were disabling and, thus, the Court should affirm the Commissioner's decision.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

14

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc.*

*Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that

16

either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected to result in death or
which has lasted or can be expected to last for a
continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in
substantial gainful activity, benefits are denied without
further analysis.

Step Two:  If the claimant does not have a severe
impairment or combination of impairments, that
"significantly limits ... physical or mental ability to do
basic work activities," benefits are denied without
further analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of

> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusions

Plaintiff complains that each element of the hypothetical question posed to the vocational expert does not accurately describe plaintiff in all significant, relevant respects and that the vocational expert's testimony at the hearing therefore does not constitute substantial evidence supporting the ALJ's determination that plaintiff is not disabled.  Although plaintiff phrases this as a Step Five finding, the undersigned concludes that plaintiff is attempting to refute the RFC finding via a purported Step Five error.  Plaintiff points to his severe impairments of left hip pain status post acetabulum fracture, degenerative disc disease of the lumbar spine, left knee pain, left shoulder bursitis, right shoulder mild degenerative cyst, headaches, anxiety and depression, and argues that the ALJ erred in finding that plaintiff's testimony as to the intensity and persistence of his symptoms associated with those impairments was not entirely credible.  As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a).  Instead, the Sixth Circuit has repeatedly held that "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004); *see*

20

*also Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").

"It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's testimony, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including

21

the objective medical evidence, statements and other information provided by

treating or examining physicians . . . and any other relevant evidence in the case

record" to determine if the claimant's claims regarding the level of his pain are

credible.  SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R.

§ 404.1529.  Consistency between the plaintiff's subjective complaints and the

record evidence 'tends to support the credibility of the [plaintiff], while

inconsistency, although not necessarily defeating, should have the opposite

effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir.

2011).

  The undersigned suggests that the ALJ's finding that the objective record

evidence did not support plaintiff's claims of disabling limitations is supported by

substantial evidence.  Here, as discussed above, the ALJ considered plaintiff's

allegations in light of the other evidence in the record and sufficiently explained

how plaintiff's allegations were inconsistent with the record evidence.

Specifically, the ALJ acknowledged that plaintiff had a motor vehicle accident in

January 2010 and that he alleged because of his resulting impairments, he has

difficulty lifting weight greater than a gallon of milk, standing longer than 20

minutes before needing to sit, walking distances greater than 100 to 250 yards,

sitting, squatting, bending, reaching and climbing stairs, and that he has difficulty

remembering, concentrating, understanding, completing tasks and sleeping.  (Tr.

20).  The ALJ concluded, however, that the objective medical findings, including many diagnostic tests, do not support the extreme limitations alleged and reveal that plaintiff is not fully credible.  (*Id.*).  For example, plaintiff alleged that his left knee pain limits his ability to walk, but the ALJ noted that the January 10, 2010 diagnostic test results on plaintiff's left knee indicated no acute displaced fracture or dislocation, and that a follow-up diagnostic test was similarly unremarkable.  (Tr. 20, 270, 299, 357).  Plaintiff also alleged disabling hip pain, and the ALJ recognized that plaintiff received a comminuted fracture involving the posterior column of the left acetabulum, but with no acute displaced fracture or dislocation of the left femur or soft tissue abnormality.  (Tr. 20, 277).  By March 2010, plaintiff's treating physician, Dr. Weber, noted on examination a healed left hip without evidence of subluxation, a May 2010 MRI was negative, revealing a healed hip fracture, and a January 2011 CT of plaintiff's pelvis revealed no acute osseous abnormality and symmetric bilateral hip joints and SI joints.  (Tr. 21, 325-26, 355, 378).  In addition, a July 2010 examination revealed that plaintiff complained of hip pain, but he was ambulatory without a limp, he denied any numbness, tingling or weakness of his leg, denied any back pain, and he had a full range of motion of the left hip and a normal gait.  (Tr. 309, 353).  Plaintiff also alleged that his shoulder impairments limited his functional ability, but the ALJ found that the medical evidence did not support this claim, in that imaging studies

23

of plaintiff's left shoulder, post accident, revealed no fractures and normal bone density, but did reveal a fourth rib fracture. (Tr. 21, 362). An October 2011 MRI revealed mild bursitis of the left shoulder and mild degenerative cyst of the right shoulder, but no evidence of a rotator cuff tear or tendinopathy. (Tr. 21, 417-18). As for plaintiff's claims of disabling back pain, the ALJ noted that a February 2010 diagnostic study of plaintiff's lumbar spine revealed an essentially normal study, but a May 2010 study revealed degenerative disc desiccation at L3-L4 through L5-S1 and mild degenerative bulging annulus at L3-L4 level, but no focal disk herniation, significant central canal stenosis or neural foraminal compromise. (Tr. 21, 298, 354, 356). The ALJ further noted that there was minimal evidence pertaining specifically to plaintiff's alleged headaches, no medical records showing plaintiff's inability to ambulate effectively, or that his hip, back or knee pain interfered seriously with his ability to initiate, sustain, or complete activities, and that, overall, plaintiff's treatment has been relatively conservative in nature, with no recent hospitalizations, surgeries, physical therapy or injection therapy. (Tr. 21-22). In fact, plaintiff's treatment, post accident, has generally consisted of moist heat and pain medications. (*Id.*). Finally, regarding plaintiff's mental condition, the ALJ found no evidence that plaintiff required any psychiatric hospitalizations and found that his treatment, which includes psychiatric medication, has been relatively effective and plaintiff has not been referred for

24

psychiatric therapy or counseling.  (Tr. 22).

Plaintiff focuses on the findings of a "comminuted fracture involving the posterior column of the left acetabulum" and degenerative changes in his lumbar spine as evidence supporting his testimony.  However, not every diagnosable impairment is necessarily disabling.  *Lee v. Comm'r of Soc. Sec.*, 529 Fed. Appx. 706, 713 (6th Cir. 2013) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [an impairment] . . . says nothing about the severity of the condition.")); *see also Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) (diagnosable impairment not necessarily disabling).   The ALJ plainly acknowledged these findings and accommodated them with plaintiff's RFC determination.

The ALJ also gave great weight to the findings of Dr. Weber on March 26, 2010 that plaintiff's left hip was well healed and that plaintiff could perform work activity without restriction.  (Tr. 23, 325).  Indeed, Dr. Weber opined that "socially and medically, he needs to get back to work" and "he has no real medical problems" and that "[a]t this point, I would not suggest anything other than just the occasional anti-inflammatory or pain control and using his left hip to tolerance." (Tr. 325-26).  The ALJ found that Dr. Weber's findings were based upon an extensive treating relationship with plaintiff and substantially supported by the record as a whole.  (Tr. 23).  Although plaintiff cites general case law

25

regarding the appropriate weight to give a treating physician's opinion, he does not specifically address Dr. Weber's opinion or otherwise argue that the ALJ erred in giving this opinion great weight.  The ALJ also gave great weight to the findings of the consultative examining physician, Dr. Lazzara, who noted that plaintiff's immediate, recent and remote memory was intact, plaintiff's upper extremities were normal, and that plaintiff had only mild difficulties doing orthopedic maneuvers and was not a surgical candidate.  (Tr. 23, 365-72).  The ALJ noted that Dr. Lazzara personally evaluated plaintiff and his findings, based on his observations, are consistent with the record evidence.  (Tr. 23).  Again, plaintiff did not address Dr. Lazzara's opinion or otherwise argue that the ALJ erred in evaluating it.

In contrast to plaintiff's subjective complaints of disabling pain, the ALJ also properly noted the wide range of activities in which plaintiff engages, including performing household chores, preparing simple meals, shopping for groceries, and watching television, and that plaintiff appeared to sit comfortably for the majority of the hearing.  (Tr. 22-23).  Plaintiff does not contest the ALJ's findings regarding his daily activities, and the undersigned notes that an ALJ can consider daily activities in assessing credibility.  20 C.F.R. § 404.1529(c)(3)(I); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (recognizing that in nearly all cases, an evaluation of a claimant's daily activities

26

is relevant to the evaluation of subjective complaints and ultimately, to the determination of disability); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds).

Therefore, plaintiff's claim that the ALJ's RFC determination is in error because that determination does not include plaintiff's subjective testimony is unavailing, as "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability," and "can present a hypothetical to the [vocational expert] on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Plaintiff appears to be arguing that merely because he has severe impairments, he must be precluded from all work. However, that is inaccurate. The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc.*

27

*Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004). "The regulations

recognize that individuals who have the same severe impairment may have

different [residual functional capacities] depending on their other impairments,

pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425,

429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). The ALJ accommodated plaintiff's

mental limitations be restricting him to work involving only simple, routine and

repetitive tasks and involving simple, work-related decisions with few, if any,

work-related changes. The ALJ accommodated plaintiff's physical limitations by

restricting him to a limited range of light work which required only lifting 10

pounds frequently and 20 pounds occasionally, a sit/stand opinion, and other

postural limitations. Plaintiff contends that the ALJ should have followed the

hypothetical questions posed to the vocational expert which included a limitation

of being off task 25% of the day or absenteeism at three or more days per month.

However, plaintiff has failed to point to any record evidence supporting such

limitations. Thus, while the medical evidence indicates that plaintiff does have

severe impairments, as noted by the ALJ, it does not specifically support

plaintiff's testimony regarding the extent of his limitations. Indeed, there is

evidence to support the ALJ's finding that plaintiff was able to perform a limited

range of light work, and thus there is substantial evidence to support the ALJ's

finding that plaintiff was not fully credible, and the plaintiff's claims of error

should be denied.

Because the ALJ reached his decision using correct legal standards and because those findings were supported by substantial evidence, the Court must affirm it, even if reasonable minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6tyh Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

29

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 27, 2014                                  s/Michael Hluchaniuk
                                                     Michael Hluchaniuk
                                                     United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>June 27, 2014</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Ameenah Lewis, Tamara Ulrich and William Woodard</u> and to the following non-ECF participant: <u>Robert Stomberski, 4559 E. Sugar River Road, Alger, MI 48610.</u>

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov